## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION

DONOVAN ROBERTS, on behalf
of himself and all others similarly
situated,

      Plaintiff,

v.

KALSHI, INC.; KALSHIEX LLC;
KALSHI KLEAR, INC.; KALSHI
KLEAR LLC; KALSHI TRADING
LLC; SUSQUEHANNA
INTERNATIONAL GROUP, LLP;
and SUSQUEHANNA GOVERNMENT
PRODUCTS, LLLP,

      Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

FILED

JAMES J. VILT JR., CLERK
U.S. DISTRICT COURT
W/D OF KENTUCKY

Date: _____May 11, 2026_____

No. __3:26-cv-336-GNS_____

### STATEWIDE CLASS ACTION COMPLAINT

Plaintiff, Donovan Roberts, on his own behalf and on behalf of all others similarly situated in the Commonwealth of Kentucky, files this state-wide class action complaint against Kalshi, Inc.; KalshiEX LLC; Kalshi Klear, Inc.; Kalshi Klear LLC; Kalshi Trading LLC; Susquehanna International Group, LLP; and Susquehanna Government Products, LLLP. (Collectively, "Kalshi" or "Defendants.").

### INTRODUCTION

1. This statewide class action seeks to recover the losses of Kentucky residents who have participated in illegal gambling on the website Kalshi.com, pursuant to the state's gambling loss recovery statute, Section 372.020 of the Kentucky Revised Statutes. This statute is intended to deter gambling by allowing Kentuckians to recover amounts they lost in illegal gambling,

including the gambling that takes place on Kalshi.com, a website that allows people to take out "futures contracts" (in other words, to place bets) on the outcomes of elections, sports contests, the weather, and other world events. As will be explained in detail below, Kalshi's "prediction market" is nothing more than gambling, and it is untaxed, unregulated, and illegal in Kentucky.

2.      In the last fifteen years, gambling companies have found a lucrative new way of doing business. In the past, slot machines, table games, and sports betting were limited to casinos and other venues that had to attract gamblers to come to particular venues in specific jurisdictions. Now, Kalshi is one of many companies that has begun offering the ability for gamblers to satisfy their gambling addiction 24-hours-a-day, 365-days-a-year, without having to leave their homes or workplaces. On Kalshi and similar sites, they can place bets for real money from home, work, restaurants, the grocery store, while on vacation, and anywhere else where the gambler's device can receive signal.

3.      Some of the "social casinos" available on the internet and on smartphone apps do not afford gamblers the opportunity to earn real money, instead allowing them to gamble only "virtual coins." Kalshi, however, allows users to bet real money on everything from elections to tennis matches. While Kentucky allows sports betting in certain heavily-regulated contexts, Kalshi does not follow any of these regulations. Unregulated sports betting is illegal in Kentucky.

4.      According to professionals who study the issue and treat gambling addicts, gambling causes many social and familial harms, including "financial stress, relationship breakdown, family violence, mental illness, and suicide." https://www.who.int/news-room /fact-sheets/detail-gambling. Further, "[t]he legacy of gambling harm can endure throughout one's life and transmit intergenerationally." *Id*.

5.      The social ills caused by gambling, especially social gaming that allows people to risk their hard-earned money anywhere in the world with nothing more than a smartphone, are well-documented. One nurse in Houston is reported to play a slot machine game similar to defendant's here for a minimum of two (2) hours a day. (**Ex. 1**, https://www.nbcnews.com/tech/technews/addicted-losing-how-casino-apps-have-drained-people-millions-n1239604 (last accessed on September 7, 2023)).  Between her and her husband, who plays the game with her, she estimates they have lost $150,000. She asked NBC News to withhold her name "so her family does not find out how much money they have spent on the game." (*Id.*). She said her and her husband "lie in bed next to each other, we have two tablets, two phones and a computer and all these apps spinning Reel Rivals at the same time. We normalize it with each other." (*Id.*). This is not an isolated instance.

> NBC News spoke to 21 people, including Shellz [the Houston nurse] and her husband, who said they were hooked on the casino-style games and spent significant sums of money. They described feelings of helplessness and wanting to quit but found themselves addicted to the games and tempted by the company's aggressive marketing tactics.
>
> Most of the 21 players wished to remain anonymous, as they were ashamed of their addictions and did not want their loved ones to find out about their behavior.

(*Id.*). For example, a "42-year-old Pennsylvania woman said she felt saddened that she spent $40,000 [on a social casino app that competes with defendant's] while working as an addiction counselor. 'The whole time I was working as an addiction counselor, I was addicted to gambling and with no hope of winning any money back,' she said."

6.      Anecdotal reports of gambling addictions in connection with online gambling and apps like Kalshi's are buttressed by recent scientific studies that confirm that such apps appeal to gambling addicts in much the same way as real Las Vegas-style casinos, and have a particular appeal to teenagers. One of the more troubling statistics comes from studies that show that 30% of

users of these games between the ages of 12 and 18 later become regular gamblers. Hollingshead SJ, *et al.* (2021). Motives for playing social casino games and the transition from gaming to gambling (or vice versa): social casino game play as harm reduction? *Journal of Gambling Issues 46*, 43-61. https://dx.doi.org/10.4309/jgi.2021.46.4. More broadly, over half of social casino and sweeps casino players reported gambling on a regular basis. (*Id.*). One study showed that an astonishing 58.3 percent of gamblers seeking treatment for gambling addiction "reported social casino games as being their first introduction to gambling activities." Kim HS (2017). Social casino games: current evidence and future directions. *Gambling Research Exchange Ontario*.

7.      Sports betting in particular appeals to minors, and many companies target teenagers in their marketing. https://www.cbc.ca/news/health/youth-sports-betting-advertisements-enticing-doctors-1.7627752. Kalshi is no different, and it both permits and encourages users under the age of 21 to wager on sporting outcomes. https://gamblingharm.org/kalshi-college-ambassadors-program/. Legal, regulated sports betting in Kentucky requires gamblers to be eighteen (18), and the legislature is considering changing that minimum age to 21.

8.      To protect its citizens from these harms, Kentucky heavily regulates gambling, and prohibits unregulated gambling within its borders. Kalshi believes that it is above Kentucky law, operating what it calls a "prediction market" that allows Kentucky residents to buy and sell "event contracts" related to everything from elections to sporting outcomes. It does this without any attempt to follow Kentucky's regulations or obtain a license to operate within the law. Kalshi takes millions out of Kentucky's economy with this activity each year, all without registering to do business in Kentucky or paying any taxes to the state.

## PARTIES, JURISDICTION, AND VENUE

9. Plaintiff, Donovan Roberts, is an adult resident citizen of Jefferson County, Kentucky.

10. Defendant, Kalshi Inc, is a Delaware corporation headquartered at 594 Broadway Room 407, New York City, New York 10012. This Defendant is the parent company of all other Kalshi entities and operates an interactive website accessible in all counties in Kentucky.

11. Defendant, KalshiEX LLC, is a Delaware corporation with its principal place of business at 594 Broadway Room 407, New York City, New York 10012.

12. Defendant, Kalshi Klear LLC, is a Delaware corporation with its principal place of business at 594 Broadway Room 407, New York City, New York 10012.

13. Defendant, Kalshi Trading LLC, is a Delaware corporation with its principal place of business at 594 Broadway Room 407, New York City, New York 10012.

14. Defendant, Susquehanna International Group, LLP, is a Delaware corporation with its principal place of business at 401 City Avenue, Suite 220, Bala Cynwyd, Pennsylvania 19004.

15. Defendant Susquehanna Government Products, LLLP is a business entity organized under the laws of the state of Delaware with its principal place of business c/o Corporation Service Company, 80 State Street, Albany, New York, 12207.

16. Plaintiff, Donovan Roberts, seeks to recover for individuals throughout Kentucky, including in his home county of Jefferson County. Defendant has no place of business in the Commonwealth of Kentucky. Therefore, venue is proper in Jefferson County.

17. This Court has personal jurisdiction over the Defendants because Defendants have sufficient minimum contacts with Kentucky to support specific personal jurisdiction in the

Commonwealth, and those contacts are directly related to Plaintiff's claims. *See International Shoe Co. v. Washington*, 326 U.S. 310 (1945).

18.    The Defendants choose to operate their gambling website in Kentucky. Their minimum contacts with the Commonwealth of Kentucky include ongoing contractual relationships created by the terms and conditions on the Kalshi website. Defendant required Plaintiff and all other Kentucky customers to agree to these terms. Both the Eleventh Circuit and the United States Supreme Court have found that personal jurisdiction is proper where a defendant created an ongoing contractual relationship with parties in the forum state. *Diamond Crystal Brands, Inc. v. Food Movers Intern., Inc.*, 593 F.3d 1249, 1269-70 (11th Cir. 2010); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985).

19.    Defendants operate the website Kalshi.com, which is an interactive website available continuously throughout Kentucky. Unlike passive websites, Kalshi.com requires users to create accounts, invites them to contact Kalshi directly through the website, allows users to place bets on events including sports, and sends money to users when they withdraw money.

20.    Kalshi also uses geo-targeted digital advertisements, banner ads, and search engine optimization to specifically target Kentucky residents. Kalshi admits in its privacy policy to using information from customers to "tailor . . . product offerings" and provide Kentucky residents a "personalized and enhanced user experience." https://kalshi.com/privacy-policy (last visited Jan. 28, 2026).

21.    Kalshi knowingly accepts payments from Kentucky bank accounts and debit/credit cards to place wagers on its website. When users owe money on the site, it contacts them directly in their home state, including in Kentucky. https://kalshi.com/privacy-policy (last visited Jan. 28, 2026).

**FACTUAL ALLEGATIONS**

22.     Kalshi operates an online "prediction market" accessible in Kentucky, whereby Kentucky residents can buy and sell "event contracts" related to, among other things, sporting outcomes. Defendants attempt to cleverly disguise these contracts as unique securities and/or commodities purportedly regulated by the Commodities Future Trading Commission; these event contracts are nothing more than thinly veiled illegal wagers based on the outcome of specific future events. For example, one can bet on whether a sports team will win or lose, as the figures below reflect:





23.     Not only can Kentucky residents bet on who will win the game, but Kalshi also provides other traditional sports gambling offerings, such as the point spread, total combined points and prop bets like how many yards or touchdowns a player may have:



24.     Kalshi claims its offerings are legal not because it complies (or makes any attempt to comply) with Kentucky law on sports betting, but because they are merely "futures" or "swaps" or "options" intended to hedge financial risks. But it is clear that these are simply bets on what will occur in the sporting event. Kalshi has admitted that these sports contracts "serve no commercial purpose at all." Multiple courts have rejected Kalshi's wordplay and found that the bets on the website constitute gambling. *KalshiEX, LLC v. Schuler*, No. 2:25-cv-1165, 2026 WL 657004 (S.D. Ohio, Mar. 9, 2026).

25.    Kalshi describes its prediction market as follows:

The NYSE and Kalshi both deal in markets, but with a key difference: what's being traded. The NYSE is a traditional stock exchange where you buy and sell shares of ownership in companies. Kalshi, on the other hand, is a prediction market. Here, you trade contracts based on whether specific events will happen, like "Will interest rates rise in the next quarter?" Think of it like predicting the future, with the price of the contracts reflecting the collective prediction of the market participants.

https://help.kalshi.com/kalshi-101/what-are-prediction-markets.

26.    Kalshi admits that this model is an "exchange where you can buy and sell contracts on the outcome of events," even admitting that the exchange is chance-based, the hallmark of gambling. https://help.kalshi.com/kalshi-101/what-are-prediction-markets.

27.    The Defendants essentially operate as bookmakers, which Kalshi calls market makers, including Kalshi Trading LLC, Susquehanna International Group, LLP and Susquehanna Government Products, LLLP.

28.    Market makers set probabilities for future events on Kalshi by buying what they consider to be undervalued event contracts and selling those that they considered to be overvalued. They do this to bring prices to an equilibrium reflecting all publicly available information. This process ensures that there is enough price movement to set the "yes" and "no" options on Kalshi to equal $1.00. Kalshi's own website admits that market makers play a vital role in propping up the prediction market.

**KENTUCKY'S GAMBLING LAWS**

29.    Unregulated gambling is illegal in Kentucky, and the Commonwealth has established detailed regulations governing the narrow circumstances in which sports betting can be legal. These regulations are promulgated and administered by the Kentucky Horse Racing and Gaming Corporation, and can be found online at https://khrc.ky.gov/newstatic_Info.aspx?static_

ID=697. See KRS 230.260 (1) ("The corporation is vested with jurisdiction and super vision over all live horse racing, pari-mutuel wagering, sports wagering . . . .")

30.    Section 230.260(2) states as follows:

> The corporation is vested with jurisdiction over any person or entity that offers advance deposit account wagering to Kentucky residents. Any such person or entity under the jurisdiction of the corporation shall be licensed by the corporation, and the corporation may impose a license fee not to exceed ten thousand dollars annually.

KRS. 230.260(2). Kalshi has made no effort to comply with this statute or obtain the requisite license.

31.    Regulation 809 KAR 1:002 also covers "Service provider licensing." This section requires any entity offering sports wagering in Kentucky to apply for a license and pay a fee. Again, Kalshi does not claim to have obtained a license for sports wagering in Kentucky or paid this fee.

32.    Kentucky backs up its stance against illegal gambling with a statute that allows people who lose money to such gambling to recover their losses. KRS 372.020. This statute provides:

> If any person loses to another at one (1) time, or within twenty-four (24) hours, five dollars ($5) or more, or anything of that value, and pays, transfers or delivers it, the loser or any of his creditors may recover it, or its value, from the winner, or any transferee of the winner, having notice of the consideration, by action brought within five (5) years after the payment, transfer or delivery. Recovery may be had against the winner, although the payment, transfer or delivery was made to the endorsee, assignee, or transferee of the winner. If the conveyance or transfer was of real estate, or the right thereto, in violation of KRS 372.010, the heirs of the loser may recover it back by action brought within two (2) years after his death, unless it has passed to a purchaser in good faith for valuable consideration without notice.

KRS 372.020.

**CLASS ALLEGATIONS**

33.     Plaintiff seeks to certify and represent a class pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure. The class sought to be certified is defined as follows:

> All Kentucky residents who lost more than five dollars ($5) during any twenty-four(24)-hour period on Kalshi's website (www.kalshi.com) or app during the five (5) years preceding the filing of the complaint and continuing to a date to be set by the Court following certification. All employees of the Court, Plaintiff's counsel and their families are excluded.

34.     This class action satisfies the numerosity requirement of Fed. R. Civ. P. 23(a)(1) because joinder of all members of the Plaintiff Class is impracticable. There are thousands of Kentucky residents who are members of the class.

35.     This class also satisfies the commonality requirement of Fed. R. Civ. P. 23(a)(2) because there are central questions of fact and law that are common to the class. Such common questions include, at a minimum (a) whether the "prediction markets" on Kalshi's website involve wagers on outcomes determined by chance; (b) whether Kalshi allows players to bet and lose real money; (c) whether Kalshi took the steps necessary to offer sports betting legally in Kentucky; (d) whether Kalshi's games thus constitute illegal gambling; and (e) whether members of the class are entitled to recover their losses pursuant to KRS 372.020.

36.     The proposed class satisfies the typicality requirement of Fed. R. Civ. P. 23(a)(3) because the named Plaintiff's claims are typical of the claims of the class members. Both Plaintiff and the class members lost money in an effort to win additional money with sweeps coins on these illegal gambling games.

37.     The named Plaintiff will fairly and adequately represent the interests of the class pursuant to Fed. R. Civ. P. 23(a)(4). Plaintiff has no interests that conflict with the interests of the

11

class. Furthermore, Plaintiff has retained competent and experienced counsel with decades of experience litigating class cases.

38. Plaintiff seeks certification of the class pursuant to Fed. R. Civ. P. 23(b)(3), which allows class treatment of a claim where:

> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

39. The common questions of law and fact in this case vastly predominate over any individual issues affecting only individual class members. The only individual issue presented by these class members is the exact amount of money damages to which each class member is entitled. Such damages issues are routinely held not to predominate over common questions in cases like this. Indeed, the individual damages issues can be quickly and accurately resolved by examining Kalshi's own records.

40. Class treatment is by far superior to individual litigation as a fair and efficient way to adjudicate this controversy. Given the relatively small individual amounts at issue, it is unlikely that there would be any adjudication of the class claims in this case at all absent their litigation in a class setting.

41.     For this reason, none of the class members have any interest in controlling the prosecution of separate actions. Likewise, to our knowledge, no class member has commenced a pending action concerning this controversy.

42.     It would be much more desirable to concentrate this case in one action rather than allow the prosecution of individual actions because, as noted, such individual actions would likely never be filed because class members would be unlikely to have any motivation to file an individual suit.

43.     Plaintiff's counsel foresee no particular difficulties in managing this case as a class action because all of the necessary information to compensate the individual class members is contained in Kalshi's own records concerning users' purchases and in the records of the platforms that facilitate the service. Defendants and the platforms Defendants use to provide the games keep extensive records which will demonstrate not only the aggregate amounts lost by players in Kentucky, but the identities of the individual players and the amounts of their individual losses. This information is easily ascertainable in discovery.

## CLAIM FOR RELIEF: CLASS CLAIM FOR INDIVIDUAL LOSSES

44.     Plaintiff incorporates the factual and legal averments of Paragraphs 1-43 by reference as if fully set forth in this count.

45.     The Kentucky Revised Statutes provide a statutory civil cause of action to recover money paid and lost due to gambling. Section 327.020 provides:

> If any person loses to another at one (1) time, or within twenty-four (24) hours, five dollars ($5) or more, or anything of that value, and pays, transfers or delivers it, the loser or any of his creditors may recover it, or its value, from the winner, or any transferee of the winner, having notice of the consideration, by action brought within five (5) years after the payment, transfer or delivery. Recovery may be had against the winner, although the payment, transfer or delivery was made to the endorsee, assignee, or transferee of the winner.

13

KRS 372.020.

46.    On behalf of himself and all others similarly situated, Plaintiff, Donovan Roberts, seeks for each class member recovery of the amount lost through wagers on Kalshi's website or app within the six (6) months preceding the filing of this complaint minus any amounts that player was actually paid back as a result of winnings, pursuant to Section 372.020 of the Kentucky Revised Statutes.

## PRAYER FOR RELIEF

1.    Take jurisdiction of this cause;

2.    Certify this case as a class action pursuant to Fed. R. Civ. P. 23(b)(2);

3.    Appoint the undersigned as Class Counsel and the named Plaintiff as class representative;

4.    Enter a final judgment against Kalshi awarding Plaintiff and the class members a refund of their net losses on Kalshi's illegal gambling games in the period between five (5) years prior to the filing of the complaint and the entry of judgment under Kentucky's gambling loss recovery statute;

5.    Award Class Counsel reasonable attorneys' fees and expenses to be paid from the common fund judgment in favor of the class;

6.    Award the Plaintiff a reasonable sum of money for his services in this case on behalf of the class, also to be paid out of the judgment in favor of the class;

7.    Award interest and costs; and

8.    Award any other relief to which the Court finds Plaintiff and the class are entitled.

Respectfully submitted this 11th day of May, 2026,

Christopher L. Rhoads
Christopher L. Rhoads
RHOADS & RHOADS PSC
115 East Second Street
P.O. Box 2023
Owensboro, Kentucky 42302-2023
Telephone:  270.683.4600
Facsimile:  270.683.1653
chris@rhoadsandrhoads.com

and

Wesley W. Barnett (pro hac anticipated)
DAVIS & NORRIS, LLP
2154 Highland Avenue South
Birmingham, Alabama 35205
Telephone:  205.930.9900
Facsimile:  205.930.9989
wbarnett@davisnorris.com

*Attorneys for Plaintiff*

15